1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

San Francisco Division

11

12    ROBERT R. DREW,

            Plaintiff,                    Case No. 16-cv-00200-LB

13

14        v.                              **ORDER DENYING PLAINTIFF'S
                                          MOTION FOR DEFAULT JUDGMENT
15    LEXINGTON CONSUMER ADVOCACY,        WITHOUT PREJUDICE**
      LLC,
                                          Re: ECF No. 21
16            Defendant.

17                              **INTRODUCTION**

18        Robert Drew filed this lawsuit after Lexington Consumer Advocacy allegedly sent him six

19    unsolicited text messages advertising payday-loan assistance services.[1] He claims violations of the

20    Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, California's Unfair

21    Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, and the common-law right to

22    privacy, and he seeks statutory and compensatory damages and an injunction to prevent further

23    TCPA violations.[2] Mr. Drew moved for default judgment after Lexington failed to appear in the

24    case.[3]

25    ──────────────────

26    [1] Complaint – ECF No. 1; First Amended Complaint ("FAC") – ECF No. 12, ¶¶ 7, 11-15.
      Citations are to the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page
      numbers at the tops of documents.

27    [2] FAC ¶¶ 16-27, 33; Motion for Default Judgment ("Motion") – ECF No. 21-1 at 8.

28    [3] Motion; *see generally* Docket
      ORDER (No. 16-cv-00200-LB)

United States District Court
Northern District of California

The court finds that it can decide this matter without oral argument under Civil Local Rule 7-1(b). Mr. Drew consented to the court's jurisdiction.[4] The court denies the motion without prejudice because Mr. Drew does not show Lexington is the text-message sender and he does not prove his damages.

## STATEMENT

Robert Drew alleges Lexington Consumer Advocacy, LLC ("Lexington") sent six unsolicited text messages to his cellphone.[5] Lexington sent the messages between November 9, 2015, and January 8, 2016, advertising payday-loan assistance services:

| No. | Date Received | Sent From | Text Message Content |
|---|---|---|---|
| 1. | November 9, 2015 | 303-622-3264 | "If you are sick of losing your whole check to payday advance fees every week, call 3036223264."[6] |
| 2. | December 2, 2015 | 210-871-9116 | "Imagine how much extra Christmas 17091 you have if you let us help you get rid of your payday loans! Call 2108719116."[7] |
| 3. | December 16, 2015 | 475-329-1921 | "Struggling to get ahead but your cash advances holding you back? We can make them go away... call 4753291921 for info."[8] |
| 4. | January 4, 2016 | 308-217-1439 | "Start the new year with no payday debt. We can make your loans disappear. Call 3082171439 for information today."[9] |

---

[4] Consent – ECF No. 7.

[5] FAC ¶¶ 7-15.

[6] *Id.* ¶ 7.

[7] *Id.* ¶ 11.

[8] *Id.* ¶ 12.

[9] *Id.* ¶ 13.

| 5. | January 8, 2016[10] | Short code 887-94 | "Do you want to Legally Get Rid of your Payday Loans? If you want them to stop Taking Money from your Bank Account? Call 561-948-2615..."[11] |
|----|-----|-----|-----|
| 6. | January 8, 2016 | Short code 887-94 | "Are Payday Loans draining your Paycheck? Is it hard to break the Payday Loan Cycle? Call 561-353-5588..."[12] |

On November 9, 2015, the day he received the first message, Mr. Drew sent Lexington a "cease and desist/demand letter . . . asking for [its] internal do not call policy and to stop contacting [him]."[13] Lexington never responded.[14] Before receiving the second text message, Mr. Drew filed a small-claims case against Lexington, which he subsequently dismissed.[15] "Even after supplying information to alert [Lexington] that [the messages] were unwanted," and "after suit was filed[,]" Lexington continued sending messages.[16] It sent the five additional text messages included in this action, and others.[17]

Mr. Drew filed his First Amended Complaint ("FAC") on January 21, 2016.[18] He asserts four claims: 1) violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*; 2) violation of TCPA regulations, 47 C.F.R. § 64.1200; 3) invasion of privacy by intrusion upon seclusion; and 4) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. Prof.

---

[10] In his default-judgment motion, Mr. Drew asserts he received this message on December 29, 2015. *See* Motion at 3. Exhibit B to the motion also supports a December 29, 2015 date. *See* Motion, Exhibit B – ECF No. 21-5 at 3.

[11] FAC ¶ 14.

[12] *Id.* ¶ 15.

[13] *Id.* ¶ 8; Motion, Exhibit A – ECF No. 21-4.

[14] FAC ¶ 9.

[15] *Id.* ¶ 10.

[16] *Id.* ¶ 18.

[17] *Id.* ¶ 11-15; Drew Decl. – ECF No. 21-2 ¶ 5(h).

[18] Complaint – ECF No. 1; FAC.

ORDER (No. 16-cv-00200-LB)          3

Code § 17200 *et seq.*[19] He seeks TCPA-statutory damages of $24,000, compensatory damages of $20,000 for invasion of his privacy, and an injunction prohibiting future TCPA violations.[20]

On February 1, 2016, the United States Marshals Service — on behalf of Mr. Drew — served the summons and FAC on Liz Garcia, a Lexington receptionist authorized by law to accept service.[21] Lexington did not answer or otherwise respond.[22] Mr. Drew subsequently applied for and the clerk entered default against Lexington.[23] He then filed the current motion for default judgment, which he served on Lexington by U.S. Mail.[24] He asks that the default-judgment motion be decided on the papers without oral argument.[25]

## ANALYSIS

### 1. Jurisdiction and service

Before entering default judgment, a court must determine whether it has subject-matter jurisdiction over the action and personal jurisdiction over the defendant. *See In re Tuli,* 172 F.3d 707, 712 (9th Cir. 1999). A court must also ensure the adequacy of service on the defendant. *See Timbuktu Educ. v. Alkaraween Islamic Bookstore*, No. C 06–03025 JSW, 2007 WL 1544790, at *2 (N.D. Cal. May 25, 2007). Mr. Drew has satisfied all three requirements.

#### 1.1 The court has subject-matter jurisdiction

First, the court has federal-question subject-matter jurisdiction over Mr. Drew's TCPA claim. *See* 28 U.S.C. § 1331. The court consequently has supplemental jurisdiction over Mr. Drew's state-law claims, which are related to his TCPA claim. *See* 28 U.S.C. § 1367.

---

[19] FAC ¶¶ 16-27.

[20] *Id.* ¶¶ 33; Motion at 7-8. In his FAC, Mr. Drew sought an injunction under the UCL but seeks an injunction under the TCPA in his motion for default judgment.

[21] Summons Returned Executed – ECF No. 15.

[22] *See generally* Docket.

[23] Application for Entry of Default – ECF No. 16; Clark's Notice of Entry of Default – ECF No. 19.

[24] Motion; Certificate of Service – ECF No. 21-7.

[25] Motion at 1.

United States District Court
Northern District of California

**1.2 The court has personal jurisdiction over Lexington**

Second, the court has personal jurisdiction over Lexington. "Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006); *Panavision Intern., L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). "Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdiction analyses under state law and federal due process are the same." *Yahoo!*, 433 F.3d at 1205 (citing *Panavision*, 141 F.3d at 1320). Due process requires that the defendant must have minimum contacts with the forum such that the assertion of jurisdiction in that forum "'does not offend traditional notions of fair play and substantial justice.'" *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2005) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 315 (1945)).

There are two types of personal jurisdiction: general and specific. *Daimler AG v. Bauman*, 134 S. Ct. 746, 754-55 (2014). "For general jurisdiction to exist over a nonresident defendant . . . , the defendant must engage in 'continuous and systematic general business contacts,' that 'approximate physical presence' in the forum state." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984); *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000)) (internal citations omitted). To establish specific jurisdiction, the plaintiff must show: "(1) [t]he non-resident defendant . . . purposefully direct[ed] [its] activities or consummate[d] some transaction with the forum or resident thereof; or perform some act by which [it] purposefully avail[ed] [itself] of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Id.* at 802.

At least two courts in this district have found specific jurisdiction in circumstances similar to this case. One court found personal jurisdiction where the out-of-state defendant sent numerous unsolicited fax advertisements to a California-based plaintiff. *j2 Global Commc'ns, Inc. v. Blue*

ORDER (No. 16-cv-00200-LB)          5

*Jay, Inc.*, No. C 08-4254 PJH, 2009 WL 29905, at *2, 8-10 (N.D. Cal. Jan. 5, 2009). Another court found personal jurisdiction where the defendant operated a website that the California-plaintiff used, called and emailed the plaintiff numerous times, and the plaintiff's claims arose out of those contacts. *Heidorn v. BDD Mktg. & Mfg. Co., LLC*, No. C-13-00229 JCS, 2013 WL 6571629, at *8 (N.D. Cal. Aug. 19, 2013).

Here, Lexington is an out-of-state corporate defendant; Mr. Drew alleges its primary place of business is in Cheyenne, Wyoming.[26] Lexington purposefully directed its activities and availed itself to the benefits of California law by sending the alleged text messages to Mr. Drew. Mr. Drew's claims arise out of these contacts—his claims are based on the alleged unsolicited text messages. And finally, exercise of jurisdiction is reasonable. Therefore, personal jurisdiction exists in this case.

### 1.3 Mr. Drew properly served Lexington

Third, Mr. Drew adequately served Lexington with process. Pursuant to Federal Rule of Civil Procedure 4(h)(1)(B), service on a corporation, partnership, or association may be made by delivery of process to an authorized agent. Here, by way of the U.S. Marshal's Service, Mr. Drew served process on Liz Garcia, a Lexington receptionist authorized by law to accept service.[27] Service was therefore proper.

Mr. Drew therefore establishes the court has subject-matter and personal jurisdiction, and that service was proper. The court next considers whether it should grant default judgment.

## 2. Default judgment

Under Federal Rule of Civil Procedure 55(b)(2), a plaintiff may apply to the district court for—and the court may grant—a default judgment against a defendant who has failed to plead or otherwise defend an action. *See Draper v. Coombs*, 792 F.2d 915, 925 (9th Cir. 1986). After entry of default, well-pleaded allegations in the complaint regarding liability and entry of default are taken as true, except as to damages. *See Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th

United States District Court
Northern District of California

---

[26] FAC ¶ 3.

[27] Summons Returned Executed – ECF No. 15.

Cir. 2002). The court need not make detailed findings of fact. *Id.* Default judgment cannot differ in kind or exceed the amount demanded in the pleadings. Fed. R. Civ. P. 54(c).

"A defendant's default does not automatically entitle the plaintiff to a court-ordered judgment," *Draper*, 792 F.2d at 924-25; that decision lies within the court's discretion, *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002). Default judgments generally are disfavored because "cases should be decided upon their merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). In deciding whether to enter a default judgment, the court considers: "(1) the possibility of prejudice to the plaintiff; (2) the merits of [the] plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Id.* at 1471-72. The court considers Mr. Drew's claims in light of these factors.

### 2.1 Possibility of prejudice to the plaintiff (first *Eitel* factor)

The first *Eitel* factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and whether such potential prejudice to the plaintiff weighs in favor of granting a default judgment. *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1054 (N.D. Cal. 2010).

Mr. Drew filed his complaint on January 12, 2016, which he subsequently amended, and properly served Lexington with process.[28] Mr. Drew also served Lexington with the current motion for default judgment by U.S. mail.[29] Lexington, however, has not appeared in the case.[30] If the court does not grant default judgment, and because of Lexington's apparent unwillingness to litigate, Mr. Drew would likely be left without recourse. The possibility of prejudice to Mr. Drew therefore weighs in favor of granting default judgment.

---

[28] Complaint; FAC; Summons Return Executed.

[29] Certificate of Service – ECF No. 21-7.

[30] *See generally* Docket.

1

**2.2 Merits and sufficiency of the TCPA claims (second and third *Eitel* factors)**

2

The second and third *Eitel* factors consider the merits of the claim and the sufficiency of the

3

complaint. "The Ninth Circuit has suggested that [these factors] . . . require that plaintiffs'

4

allegations 'state a claim on which the [plaintiff] may recover.'" *Kloepping v. Fireman's Fund*,

5

No. C 94-2684 TEH, 1996 WL 75314, at *2 (N.D. Cal. Feb. 13, 1996) (citing *Danning v. Lavine*,

6

572 F.2d 1386, 1388 (9th Cir. 1978)) (alteration in original).

7

Mr. Drew asserts claims for violation of the TCPA and its implementing regulations.[31] He

8

claims: 1) the text messages are generally prohibited as automatic, unsolicited, and nonconsensual

9

telephone calls; 2) the messages were sent in violation of the do-not-call registry; 3) the texts

10

failed to identify the sender; and 4) Lexington did not provide its internal do-not-call policy upon

11

demand.[32] The issue is whether he has pled sufficient facts, taken as true, to state a claim under the

12

TCPA.

13

The TCPA prohibits two types of phone calls: 1) unsolicited phone calls made using automatic

14

dialers, 47 U.S.C. § 227(b), and 2) phone calls made in violation of do-not-call registries, *id.*

15

§ 227(c). *See Cunningham v. Addiction Intervention*, No. 3:14-0770, 2015 WL 1101539, at *1

16

(M.D. Tenn. March 11, 2015) (describing §§ 227(b) and (c) as distinct). Mr. Drew's TCPA claims

17

arise under these two statutory sections.

18

**2.2.1 Section 227(b) claim**

19

The TCPA provides a private right of action for violations of § 227(b) and the associated

20

regulations. 47 U.S.C. § 227(b)(3). Subsection (b) prohibits calls (other than for an emergency) to

21

a telephone number assigned to a cellphone by way of an automatic telephone dialing system

22

("ATDS") without the prior express consent of the called party. 47 U.S.C. § 227(b)(1)(A)(iii). In

23

the Ninth Circuit, a plaintiff must show: (1) "the defendant called a cellular telephone number; (2)

24

"using an automatic telephone dialing system; (3) without the recipient's prior express consent."

25

*Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012). A plaintiff must

26

27

[31] FAC ¶¶ 16-18, 23-24, 33.

28

[32] FAC ¶¶ 16-18, 23-24, 33.

United States District Court
Northern District of California

1    also be a "called party" within the definition of the TCPA. *Charkchyan v. EZ Capital*, No. 2:14-

2    cv-03564-ODW (ASx), 2015 WL 3660315, at *3 (C.D. Cal. June 11, 2015)

3        First, a text message is a "call" for purposes of the TCPA. *Satterfield v. Simon & Schuster,*

4    *Inc.*, 569 F.3d 946, 952-54 (9th Cir. 2009). Here, Mr. Drew alleges that he received six text

5    messages from Lexington. He supports his allegation with activity logs from November 2015 to

6    January 2016 documenting the six messages.[33] This element is satisfied.

7        Second, Mr. Drew adequately pleads use of an automatic telephone dialing system ("ATDS").

8    The TCPA defines ATDS to mean "equipment which has the capacity — (A) to store or produce

9    telephone numbers to be called, using a random or sequential number generator; and (B) to dial

10   such numbers." 47 U.S.C. § 227(a)(1). The focus of the inquiry is on the equipment's *capacity* to

11   perform this function. *See Satterfield*, 569 F.3d at 951. "Accordingly, a system need not actually

12   store, produce, or call randomly or sequentially generated telephone numbers, it need only have

13   the capacity to do it." *Id.*

14       "In proving a defendant's use of [an] ATDS under the TCPA, courts have recognized the

15   difficulty a plaintiff faces in knowing the type of calling system the defendant used without the

16   benefit of discovery." *Charkchyan* 2015 WL 3660315 at *3. For example, in *Charkchyan*, the

17   plaintiff's allegations supported the use of an ATDS. *Id.* In that case, the plaintiff described the

18   messages received "as being formatted in SMS short code, '670-76,'" and as being impersonally

19   scripted. *Id.* This was enough to establish the defendant used an ATDS. *Id.* Similarly, in *Kramer v.*

20   *Autobytel*, the plaintiff alleged sufficient facts to support a reasonable inference that the defendants

21   used an ATDS: "[The plaintiff] described the messages from SMS short code 77893, a code

22   registered to [a defendant]. The messages were advertisements written in an impersonal manner.

23   [And,] [the plaintiff] had no other reason to be in contact with the Defendants." 759 F. Supp. 2d

24   1165, 1171 (N.D. Cal. 2010). In contrast, the plaintiff in *Williams v. T-Mobile USA, Inc.* failed to

25   plead more than "legal conclusions couched in fact" when asserting the "barrage of calls and . . .

26   frequency and pattern of the calls provide[d] the necessary factual support." No. 15-cv-3384-JSW,

27

28   ───────────────
     [33] Exhibit B – ECF No. 21-5.

United States District Court
Northern District of California

2015 WL 5962270, at *2-3 (N.D. Cal. Oct. 14, 2015). *See also Daniels v. ComUnity Lending, Inc.*, No. 13cv488-WQH-JMA, 2014 WL 51275, at *5 (S.D. Cal. Jan. 6, 2014) (ATDS use not plausible because the allegations indicated the defendants directed calls specifically towards the plaintiff).

Here, Mr. Drew alleges that Lexington contacted him using a "telephone dialing system."[34] This is insufficient standing alone, but as in *Charkchyan* and *Kramer*, Mr. Drew alleges sufficient additional facts. First, two of the messages were allegedly sent in SMS short code (887-94).[35] Second, the messages are impersonal advertisements: they do not address Mr. Drew personally and they advertise payday-loan services.[36] Third, Mr. Drew declares that he has "never heard of [Lexington], visited any location operated by [Lexington], provided [his] cellular telephone number to [Lexington,] or consented to receive text messages from [Lexington]."[37] He also had "no prior business relationship" with Lexington.[38] Taking these allegations as true, Mr. Drew had no reason to be in contact with Lexington. Mr. Drew's allegations are sufficient to establish that Lexington used ATDS in sending the text messages. This element is therefore satisfied.

Third, Mr. Drew adequately pleads that the conduct was without his prior express consent. "Prior express consent" under the TCPA is "consent that is clearly and unmistakably stated." *Satterfield*, 569 F.3d at 955; *Charkchyan*, 2015 WL 3660315 at *3. Moreover, "[t]he Federal Communications Commission ('FCC'), tasked with instituting implementing regulations for the TCPA, added an express *written* consent requirement in the case of messages that 'include[] or introduce[] an advertisement or constitute[] telemarketing.'" *Meyer v. Bebe Stores, Inc.*, No. 14-cv-00267-YGR, 2015 WL 431148, at *3 (N.D. Cal. Feb. 2, 2015) (citing 47 C.F.R. § 64.1200(a)(2)). An "advertisement" includes "any material advertising the commercial availability or quality of any property, goods, or services." 47 C.F.R. § 64.1200(f)(1). "Telemarketing" means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental

---

[34] FAC ¶ 18.

[35] FAC ¶¶ 14-15; Exhibit B at 3.

[36] FAC ¶¶ 7, 11-15.

[37] Drew Decl. – ECF No. 21-2 ¶ 4.

[38] FAC ¶ 18.

1   of, or investment in, property, goods, or services, which is transmitted to any person." *Id.* §

2   64.1200(f)(12). Establishing prior express consent of the called party "is an affirmative defense for

3   which the defendant bears the burden of proof." *Charkchyan*, 2015 WL 3660315 at *3.

4       In *Charkchyan*, the plaintiff did not give prior express consent. *Id.* There, the plaintiff claimed:

5   "(1) he [was] the current subscriber to the cellular telephone at issue; (2) he [had] never heard of

6   [the defendant]; (3) he [had] never visited any location operated by [the defendant]; and (4) he

7   [had] never provided his cellular number to [the defendant], nor consented to receiving calls from

8   [the defendant]." *Id.* Where the defaulting defendant failed to provide any conflicting evidence,

9   this was sufficient. *Id.*

10      Similarly, in Mr. Drew's case, his allegations establish that he did not give prior express

11   consent. He declares that he "was the regular user and subscriber to the cellular telephone number

12   at issue."[39] He also declares that he has "never heard of [Lexington], visited any location operated

13   by [Lexington], provided [his] cellular telephone number to [Lexington,] or consented to receive

14   text messages from [Lexington]."[40] As in *Charkchyan*, these allegations are sufficient to support

15   Mr. Drew's claim that he did not give prior express consent authorizing Lexington to send the

16   messages. Furthermore, the text messages promote the sender's payday-loan services and fall

17   within the FCC's definition of an advertisement and/or telemarketing. Thus, express written

18   consent was required, and there is no evidence of such. This element is consequently satisfied.

19      Fourth, Mr. Drew sufficiently pleads that he was the "called party." To have standing under

20   the TCPA, a plaintiff must be the "called party." *See Charkchyan*, 2015 WL 3660315 at *3, *4; 47

21   U.S.C. § 227(b)(1)(A). A telephone service subscriber is the "called party" within the meaning of

22   the TCPA. *Charkchyan*, 2015 WL 3660315 at *3; *Gutierrez v. Barclays Group*, No. 10cv1012

23   DMS (BGS), 2011 WL 579238, at *4 (S.D. Cal. Feb. 9, 2011). Here, Mr. Drew declares that he

24   "was the regular user and subscriber to the cellular phone number" that received the text

25   messages.[41] He is therefore the "called party." *See Charkchyan*, 2015 WL 3660315 at *3.

26   _____

27   [39] Drew Decl. ¶ 3.

     [40] *Id.* ¶ 4.

28   [41] *Id.* ¶ 3.

ORDER (No. 16-cv-00200-LB)          11

United States District Court
Northern District of California

1    In sum, taking his allegations as true, and except for an issue about whether he establishes that

2  Lexington is the offending party (see below), Mr. Drew's complaint sufficiently pleads a claim

3  under § 227(b)(1)(A)(iii) of the TCPA.

4        **2.2.2 Section 227(c) claim**

5    Section 227(c)(5) provides that "[a] person who has received more than one telephone call

6  within any 12-month period by or on behalf of the same entity in violation of the regulations

7  prescribed under this subsection" may bring an action for injunctive relief, damages, or both. *See*

8  *Heidorn*, 2013 WL 6571629 at *10. 47 C.F.R. § 64.1200(c) and (d) are regulations promulgated

9  under § 227(c). *Id.* Subsection (c) prohibits all telephone solicitations to "[a] residential telephone

10  subscriber who has registered his or her telephone number on the national do-not-call registry

11  . . . ." 47 C.F.R. § 64.1200(c)(2). Subsection (d) requires any person who initiates calls for

12  telemarketing purposes to institute and maintain do-not-call procedures. *Id.* § 64.1200(d). "Persons

13  or entities making calls for telemarketing purposes must have a written policy, *available upon*

14  *demand*, for maintaining a do-not-call list." *Id.* § 64.1200(d)(1) (emphasis added). Also, "[a]

15  person or entity making a call for telemarketing purposes must provide the called party with the

16  name of the individual caller, the name of the person or entity on whose behalf the call is being

17  made, and a telephone number or address at which the person or entity may be contacted." *Id.* §

18  64.1200(d)(4). Although these regulations refer to "residential" subscribers, they apply to calls

19  made to wireless telephone numbers, too. *Id.* § 64.1200(e); *Heidorn*, 2013 WL 6571629 at *10-11.

20    Here, Mr. Drew alleges that he received the six messages between November 9, 2015 and

21  January 8, 2016 and thus has standing to seek relief under § 227(c)(5).[42] His allegations are

22  insufficient to support a claim under subsection (d). He merely alleges that Lexington called a

23  number on the national do-not-call list.[43] He does not provide any factual allegations or

24  evidentiary support that his number was, during the relevant time period, on the do-not-call list.

25  *See Andrews v. All Green Carpet & Floor Cleaning Serv.*, No. 5:14-cv-0001590ODW(Ex), 2015

26

27  [42] FAC ¶¶ 7, 11-15.

28  [43] FAC ¶ 33.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    WL 3649585, at *4 (C.D. Cal. June 11, 2015) (plaintiff provided records showing phone number

2    was on the do-not-call list). He therefore fails to state a claim under subsection (c).

3        His allegations do, however, support a claim under subsection (d). As discussed above, the text

4    messages are "telemarketing" within the statutory definition. Mr. Drew alleges he sent Lexington

5    a "cease and desist/demand letter . . . asking for [its] internal do not call policy[,]" but never heard

6    back.[44] He necessarily did not receive a copy of its do-not-call policy because Lexington did not

7    respond. Lexington therefore initiated a telemarketing call without an internal do-not-call policy

8    available on demand in violation of § 64.1200(d)(1). Additionally, although each message

9    provided a return phone number, none of them identified the entity sending the message.[45] This

10   violates § 64.1200(d)(4).

11       Except for the sufficiency of the allegations about Lexington specifically, discussed below,

12   Mr. Drew's TCPA claims support granting default judgment.

13   **2.3 Merits and sufficiency of the privacy claim (second and third *Eitel* factors)**

14       Mr. Drew brings a claim for invasion of privacy by intrusion upon seclusion.[46] "An action for

15   invasion of privacy has two elements: (1) an intrusion into a private place, conversation, or matter,

16   (2) in a manner highly offensive to a reasonable person." *Masuda v. Citibank, N.A.*, 38 F. Supp. 3d

17   1130, 1134 (N.D. Cal. 2014) (citing *Taus v. Loftus*, 40 Cal. 4th 683, 725 (2007)). The intrusion

18   must be intentional. *Taus*, 40 Cal. 4th at 725; *Smith v. Capital One Fin. Corp.*, No. C 11-3425

19   PJH, 2012 WL 1669347, at *3 (N.D. Cal. May 11, 2012). "In addition, the plaintiff must have had

20   an objectively reasonable expectation of seclusion or solitude in the place, conversation or data

21   source." *Id.* (citing *Shulman v. Group W Prods., Inc.*, 18 Cal. 4th 200, 232 (1998)).

22   "[D]etermining offensiveness requires consideration of all the circumstances of the intrusion,

23   including its degree and setting and the intruder's 'motive and objectives.'" *Shulman*, 18 Cal. 4th

24   at 236.

25

26   _____

[44] *Id.* ¶¶ 8-9; Exhibit A – ECF No. 21-4.

27   [45] *See* FAC ¶¶ 7, 11-15.

28   [46] *Id.* ¶¶ 19-22.

1    Courts in this district have found "repeated and continuous calls made in an attempt to collect

2    a debt may give rise to a claim of intrusion upon seclusion." *Masuda*, 38 F. Supp. 3d at 134. For

3    example, in *Fausto v. Credigy Servs. Corp.*, the court found the following facts supported a claim

4    for invasion of privacy: "[the] Defendants made over ninety calls to [the Plaintiffs'] home, . . . the

5    content of those calls was harassing . . . [,] [the] Defendants failed to identify themselves when

6    calling, and would allow the phone to ring repeatedly when calling only to call back immediately

7    after [the] Plaintiffs hung up the phone." 598 F. Supp. 2d 1049, 1056 (N.D. Cal. 2009). Similarly,

8    in *Masuda*, the plaintiff stated a claim for invasion of seclusion. 38 F. Supp. 3d at 1134-35. There,

9    the plaintiff alleged the defendant called over 300 times. *Id.* at 1135. The plaintiff did not "allege

10   that the content of the calls was offensive," but in light of the number of calls, multiple requests to

11   stop, and confirmation from the defendant that it would stop (but failed to do so), the allegations

12   were sufficient. *Id.*

13       Here, Lexington's text messages were not made in an effort to collect a debt but are

14   nonetheless analogous to those circumstances. *See Heidorn*, 2013 WL 6571629 at *13-14 (making

15   a similar comparison under California's constitutional right to privacy). As in *Fausto* and *Masuda*,

16   Mr. Drew alleges Lexington sent him six unsolicited text messages up to the time he filed suit and

17   that it continues to send them (he last received a message on March 1, 2016).[47] Although the

18   content is not objectively offensive — it relates only to payday loan services — at least five of

19   these messages were received after Mr. Drew sent a cease and desist letter and filed a small-claims

20   case.[48] Additionally, the messages were received "at all hours of the day and night;" the record

21   shows they were sent between 7:26 a.m. and 4:09 p.m.[49]

22       On this argument and record, the court is not convinced that Mr. Drew adequately pleads the

23   harassment that constitutes an invasion of privacy. The six text messages are not as extensive or

24   offensive as the hundreds of calls in *Fausto* and *Masuda*. Moreover, as discussed below, Mr. Drew

---

[47] *Id.* ¶ 7, 11-15;

[48] *Id.* ¶¶ 8-15; Motion, Ex. A.

[49] Motion, Ex. B.

United States District Court
Northern District of California

does not sufficiently tether Lexington to the alleged misconduct or establish his entitlement to damages for the alleged invasion of his privacy. This claim therefore weighs against default judgment.

### 2.4 Merits and sufficiency of the UCL claim (second and third *Eitel* factors)

Mr. Drew asserts a claim under California's Unfair Competition Law, Cal. Bus. Prof. Code § 17200, *et seq.*[50] He generally asserts that, because the text messages violate federal law (the TCPA), "they are unlawful business practices within the meaning of [the UCL]."[51]

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. A TCPA violation — "unlawful" conduct — may serve as a predicate for a UCL claim. *See Heidorn*, 2013 WL 6571629 at *11; *Sepehry-Fard v. Dep't Stores Nat'l Bank*, No. 13-CV-03131-WHO, 2013 WL 6574774, at *9 (N.D. Cal. Dec. 13, 2013) ("TCPA allegations can act as a predicate act for an illegal and/or unfair claim under the UCL.") The UCL, however, authorizes private actions only "by a person who has suffered injury in fact *and has lost money or property as a result* of the unfair competition." Cal. Bus. & Prof. Code § 17204 (emphasis added); *id.* § 17203 (claimant for court-ordered injunction must satisfy the requirements of § 17204). The issue, then, is whether Mr. Drew has standing under the UCL.

Here, Mr. Drew alleges no facts showing he suffered economic harm. His call logs indicate he was not charged for the alleged TCPA-violating text messages.[52] Absent any allegations to the contrary — *i.e.* that he passed on another transaction, was forced into a transaction, or incurred additional expenses — Mr. Drew lacks standing to sue under the UCL. This claim therefore does not weigh in favor of default judgment.

---

[50] FAC ¶¶ 25-27.

[51] *Id.* ¶ 26.

[52] *See* Motion, Exhibit B.

**2.5 Sufficiency of allegations about Lexington (second and third *Eitel* factors)**

As discussed above, Mr. Drew alleges sufficient facts to state a claim that *someone* violated the TCPA. The issue here is whether he alleges sufficient facts to support a claim against *Lexington*. He does not.

In *Andrews v. All Green Carpet & Floor Cleaning Service*, the plaintiff provided sufficient evidence to support TCPA claims against specific defendants. No. 5:14-cv-000159-ODW(Ex), 2015 WL 3649585 (C.D. Cal. June 11, 2015). There, the plaintiff sued the defendants for initiating unsolicited phone calls. *Id.* at *1. The plaintiff provided "in-depth records show[ing] that she received numerous calls from numbers purchased and owned by [the defendants] over the course of several months." *Id.* at *4. These records included "(1) photographic evidence of [the plaintiff's] Caller-ID, records of calls placed to [her]; (2) [the plaintiff's] status as being registered with the Do-Not-Call Registry; and (3) the numbers in question being present on the list of numbers owned by [the defendants]." *Id.* These facts were established by declarations and supporting exhibits. *Id.*

In contrast, here, Mr. Drew does not provide sufficient evidence to support his claims against Lexington. By sworn declaration, he establishes the following: "[he] was a regular user and subscriber to the cellular telephone number at issue."[53] "[He] [has] never heard of [Lexington], visited any location operated by [Lexington], provided [his] cellular telephone number to [Lexington][,] or consented to receive text messages from [Lexington]."[54] He further declares that he received seven text messages from Lexington (though he only alleges six in his FAC).[55] He has "also continued to receive [text] messages from [Lexington] . . . [,] [t]he latest being" on March 1, 2016.[56] James Cilia — of unknown relation to Mr. Drew — declares under penalty of perjury that he "witnessed firsthand the majority of telephone text messages being received by [Mr. Drew]."[57]

---

[53] Drew Decl. – ECF No. 21-2, ¶ 3.

[54] *Id.* ¶ 4.

[55] *Id.* ¶ 4.

[56] *Id.* ¶ 6.

[57] Cilia Decl. – ECF No. 21-3.

ORDER (No. 16-cv-00200-LB)                    16

1   He further declares Lexington solicited Mr. Drew multiple times, the text messages were for

2   payday loan assistance, and Mr. Drew mailed a cease and desist letter to Lexington.[58]

3       Unlike the plaintiff in *Andrews*, Mr. Drew does not plausibly show that it was Lexington that

4   sent the text messages. He alleges throughout the FAC and declares that Lexington sent the

5   messages. He does not identify how he knows this. *See Heidorn*, 2013 WL 6571629 at *15

6   (allegations on information and belief that defendant called were insufficient to obtain TCPA

7   damages). The messages themselves are vague and do not identify the sender; instead, they

8   provide different return numbers and say generally "call *us*", "*we* can help." Similar to the Caller-

9   ID evidence in *Andrews*, Mr. Drew attaches to his motion cellphone activity logs purporting to

10  show the six alleged text messages.[59] Neither he nor Mr. Cilia, however, attest to the accuracy and

11  veracity of these records. More importantly, he does not provide evidence that Lexington owned,

12  licensed, or registered the sending phone numbers or SMS short codes identified on the call logs.

13  *See Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165 (N.D. Cal. 2010) ("[The plaintiff] described

14  the messages from SMS short code 77893, a code registered to B2Mobile."); *Kazemi v. Payless*

15  *Shoesource Inc.*, No. C 09-5142 MHP, 2010 WL 963225 (N.D. Cal. March 16, 2010) (plaintiff

16  described the messages "as being formatted in SMS short code licensed to defendants"). Nor does

17  he declare that he ever responded to or spoke with Lexington and thereby confirmed its identity.

18  *See Heidorn*, 2013 WL 6571629 at *1-2, 15 (plaintiff spoke with defendant on the phone). Mr.

19  Drew therefore fails to allege sufficient facts support his claim against Lexington.

20  **2.6 Conclusion on merits and sufficiency of the complaint (second and third *Eitel* factors)**

21      In conclusion, taking his allegations as true, Mr. Drew sufficiently pleads a claim for violation

22  of the TCPA, but does not adequately plead or otherwise prove Lexington's involvement.

23  **2.7 Sum of money at stake (fourth *Eitel* factor)**

24      The fourth *Eitel* factor considers the amount of money at stake in the litigation. When the

25  money is substantial or unreasonable, default judgment is discouraged. *See Eitel*, 782 F.2d at 1472

26

27  [58] *Id.*

28  [59] Motion, Exhibit B.

ORDER (No. 16-cv-00200-LB)            17

(three-million dollar judgment, considered in light of parties' dispute as to material facts, supported decision not to enter default judgment); *Tragni v. Southern Elec. Inc.*, No. 09-32 JF, 2009 WL 3052635, at *5 (N.D. Cal. Sept. 22, 2009); *Board of Trustees v. RBS Washington Blvd, LLC*, No. C 09-00660 WHA, 2010 WL 145097, at *3 (N.D. Cal. Jan. 8, 2010). When the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate. *See Board of Trustees of the Sheet Metal Workers Health Care Plan v. Superhall Mechanical, Inc.*, No. C-10-2212 EMC, 2011 WL 2600898, at *2-3 (N.D. Cal. June 20, 2011) (the sum of money for unpaid contributions, liquidated damages, and attorneys' fees were appropriate as they were supported by adequate evidence provided by the plaintiffs).

Here, Mr. Drew seeks statutory TCPA damages (trebled) of $24,000 and compensatory damages of $20,000 for invasion of his privacy.[60] *See* 47 U.S.C. §§ 227(b)(3), (c)(5). As discussed below, Mr. Drew is not entitled to damages for all of the alleged violations and trebled damages are not warranted in this case. Moreover, Mr. Drew has not substantiated $20,000 in compensatory damages, *i.e.* detailing how the text messages caused him injury. With these caveats, the amount of money at stake does not weigh against default judgment.

### 2.8 Possibility of a factual dispute or excusable neglect (fifth and sixth *Eitel* factors)

The fifth and sixth *Eitel* factors consider the potential of factual disputes and whether a defendant's failure to respond was likely due to excusable neglect. In *Eitel*, there was both a factual dispute and excusable neglect. 782 F.2d at 1472. There, the defendant disputed material facts in the (untimely) answer and counterclaim. *Id.* Moreover, the defendant's response was late because the parties had previously agreed to "what appeared to be a final settlement agreement" and "[the defendant] reasonably believed that the litigation was at an end." *Id.* Because of his reasonable reliance and prompt response when the agreement dissolved, the defendant's failure to respond timely appeared due to excusable neglect. *Id.*

---

[60] FAC ¶ 33.

ORDER (No. 16-cv-00200-LB)                18

1    Here, Mr. Drew served Lexington with the complaint and the current motion for default

2    judgment.[61] Unlike the defendant in *Eitel*, however, Lexington has not presented a defense or

3    otherwise communicated with the court. There is consequently no evidence of a factual dispute or

4    excusable neglect. This factor supports default judgment.

5    **2.9 Policy favoring a decision on the merits (seventh *Eitel* factor)**

6    The seventh *Eitel* factor requires considering the strong policy favoring decisions on the

7    merits. *See Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985). Although

8    default judgment is disfavored, "[t]he very fact that F.R.C.P. 55(b) exists shows that this

9    preference, standing alone, is not dispositive." *Kloepping v. Fireman's Fund*, No. C 94-2684 TEH,

10   1996 WL 75314, at *3 (N.D. Cal. Feb. 13, 1996). "While the Federal Rules do favor decisions on

11   the merits, they also frequently permit termination of cases before the court reaches the merits[,] . .

12   .[as] when a party fails to defend against an action." *Id.*

13   Lexington has failed to respond, correspond with the court, or otherwise mount any form of

14   defense despite being served with the relevant papers. Because of its refusal to participate,

15   litigation on the merits does not appear possible. This factor consequently supports default

16   judgment.

17   Except that Mr. Drew fails to plausibly identify Lexington as the wrongdoer, in sum and on

18   balance, the *Eitel* factors weigh in favor of granting the default judgment.

19   **3.  Relief sought**

20   Mr. Drew seeks TCPA statutory damages of $24,000, compensatory damages of $20,000 for

21   invasion of privacy, and injunctive relief.[62] In his motion for default judgment, he does not re-

22   assert his demand for a UCL-based injunction. He instead seeks an injunction under the TCPA to

23   "prevent[] [Lexington's] further illegal activities in violation of federal law."[63]

24

25

26   _____

27   [61] Summons Returned Executed; Certificate of Service.

     [62] FAC ¶¶ 33.

28   [63] Motion at 7-8.

ORDER (No.  16-cv-00200-LB)                    19

United States District Court
Northern District of California

The law underlying Mr. Drew's claims generally authorize the relief he seeks. First, the TCPA authorizes private actions for injunctive relief and/or damages equal to the greater of actual monetary loss or $500. 47 U.S.C. §§ 227(b)(3), (c)(5). The court has discretion to award up to three times the damages value when the defendant "willfully or knowingly" violated the TCPA. *Id.* Second, a plaintiff may recover compensatory damages for the tort of invasion of privacy. *Fairfield v. Am. Photocopy Equip. Co.*, 138 Cal. App. 82, 87-89 (1955). The issue, therefore, is whether Mr. Drew has "proven up" his demand. *See Amini Innovation Corp. v. KTY Intern Mrktg.*, 768 F. Supp. 2d 1049, 1053-54 (C.D. Cal. 2011).

In assessing the *Eitel* factors, all factual allegations in the complaint are taken as true, except those with regard to damages. *See Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). "To recover damages after securing a default judgment, a plaintiff must prove the relief it seeks through testimony or written affidavit." *Bd. of Trustees of the Laborers Health & Welfare Trust Fund for N. Cal. v. A & B Bldg. Maint. Co. Inc.*, C 13-00731 WHA, 2013 WL 5693728, at *4 (N.D. Cal. Oct. 17, 2013); *Cannon v. City of Petaluma*, No. C 11-061 PJH, 2011 WL 3267714, at *4 (N.D. Cal. July 29, 2011) ("In order to 'prove up' damages, a plaintiff is generally required to provide admissible evidence (including witness testimony) supporting damage calculations."). *See also Bd. of Trustees of Bay Area Roofers Health & Welfare Trust Fund v. Westech Roofing*, 42 F. Supp. 3d 1220, 1232 n.13 (N.D. Cal. 2014) ("It is Plaintiffs' burden on default judgment to establish the amount of their damages.").

In addition, pursuant to Federal Rule of Civil Procedure 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). The purpose of this rule is to ensure that a defendant is put on notice of the damages being sought against him so that he may make a calculated decision as to whether or not it is in his best interest to answer. *In re Ferrell,* 539 F.3d 1186, 1192-93 (9th Cir. 2008); *Board of Trs. of the Sheet Metal Workers Local 104 Health Care Plan v. Total Air Balance Co.*, No. 08-2038 SC, 2009 WL 1704677, at *3-5 (N.D. Cal. June 17, 2009).

1

### 3.2 Statutory TCPA damages

2    Mr. Drew seeks a total of $24,000 in statutory TCPA damages. His demand breaks down as

3  follows: 1) $1,500 (trebled) for each of six counts calling a cellphone using an ATDS ($9,000

4  total); 2) $1,500 (trebled) for each of six counts calling a number on the national do-not-call list

5  ($9,000 total); 3) $1,500 (trebled) for one count failure to identify the sender's name and/or

6  address; 4) $1,500 (trebled) for one count failure to supply the sender's internal do-not-call policy;

7  and 5) $500 for each of six counts contacting a number on the do-not-call list under the TCPA

8  implementing regulations.

9    The court must address three issues when considering TCPA damages. *See, e.g.*, *Heidorn*,

10  2013 WL 6571629 at *15-17; *j2 Global Commc'ns*, 2009 WL 4572726 at *7-8; *Roylance v. ALG*

11  *Real Estate Services, Inc*., No. 5:14-cv-02445-PSG, 2015 WL 1522244 (N.D. Cal. March 16,

12  2015) *adopted as modified by* No. 14-cv-02445-BLF, 2015 WL 1544229 (N.D. Cal. April 3,

13  2015). First, the court must determine the number of TCPA violations the plaintiff has established.

14  *Heidorn*, 2013 WL 6571629 at *15; *Roylance*, 2015 WL 1522244 at *9. Here, Mr. Drew

15  establishes multiple violations under §§ 227(b) and (c). He establishes that the each of the six

16  messages violated the TCPA's prohibition on automated telephone calls. He also establishes one

17  violation for failure to identify the sender and one violation for initiating a call without an internal

18  do-not-call policy available upon demand. [64] As discussed above, he does not establish that the

19  messages were sent in violation of the national do-not-call list because he provides no evidence

20  that his number was on the list during the relevant time. In total, Mr. Drew establishes eight TCPA

21  violations.

22    Second, the court must determine whether the "violations should be counted as *separate*

23  violations for the purposes of damages." *Heidorn*, 2013 WL 6571629 at *16 (emphasis in

24  original); *Roylance*, 2015 WL 1522244 at *10. In *Heidorn*, the plaintiff could not recover separate

25  statutory damages for a single phone call that violated multiple regulations under § 227(c).

26

27

---

[64] Mr. Drew alleges only one violation for failure to identify the sender and on violation for initiating a call without an internal do-not-call policy available upon demand. (FAC ¶ 33.)

United States District Court
Northern District of California

2013 WL 6571629 at *16. There, the court reasoned the plain language of § 227(c)(5) — which authorizes damages for violations of § 227(c) and the regulations — "indicates that a telephone call that violates more than one provision of the regulations is considered to be a single violation rather than multiple violations." *Id.* Thus, the plaintiff was "entitled to statutory damages based on . . . the number of telephone calls . . . that were adequately alleged in the complaint to have been made in violation of the regulations, regardless of whether the telephone calls violated only one provision or multiple provisions of the regulations." *Id.*

Distinctly, in *Roylance*, the plaintiff recovered statutory TCPA damages for § 227(b) and § 227(c) violations arising from the same phone call. 2015 WL 1522244 at *10. The court reasoned that "the fact that the statute includes separate provisions for statutory damages in subsections (b) and (c) suggests that a plaintiff could recover under both." *Id.* (quoting *Charvat v. NMP, LLC*, 656 F.3d 440, 448 (6th Cir. 2011)). Thus, the court permitted the plaintiff to "recover damages for both of his TCPA claims because 'a person may recover statutory damages for violations of the automated-call requirements' and for violations of 'the do-not-call-list requirements . . . even if both violations occurred in the same telephone call." *Id.* (quoting *Charvat*, 656 F.3d at 449).

The court agrees with the reasoning in both *Heidorn* and *Roylance*. Here, Mr. Drew establishes two violations of § 227(c) under the implementing regulations because 1) the sender did not identify its name or address and 2) the sender did not produce its internal do-not-call policy. He seeks recovery for these violations only once, *i.e.* he does not seek recovery based on each of the six text messages.[65] Because he does not specify otherwise, the court construes Mr. Drew's claim to be that one text message violated both requirements (which they each individually did). As in *Heidorn*, both of the violations are premised on the initiation of a phone call in violation of the regulatory requirements. As such, although the text message violated two separate requirements, Mr. Drew may only recover for one § 227(c) violation based on a single text message.

---

[65] FAC ¶ 33.

United States District Court
Northern District of California

1   As in *Roylance*, however, Mr. Drew may recover statutory damages for the § 227(b) and

2   § 227(c) violations even though these violations arise from the same telephone contact. Mr. Drew

3   establishes six separate violations of § 227(b): the six messages sent by use of an ATDS. In total,

4   then, he is entitled to receive damages for seven separate TCPA violations: one § 227(c) violation

5   and six § 227(b) violations.

6   Third, the court must determine the appropriate amount of damages to be awarded, including

7   whether the damages should be trebled. *Heidorn*, 2013 WL 6571629 at *16-17; *Roylance*, 2015

8   WL 1522244 at *10-11. The TCPA provides for a statutory minimum of $500 per violation and

9   gives the court discretion to award up to three times that amount for knowing or willful violations.

10  47 U.S.C. §§ 227(b)(3), (c)(5).

11  Here, Mr. Drew seeks trebled damages.[66] He attempts to show the violations were knowing

12  and willful by alleging the following: the day he received the first text message, he sent Lexington

13  a cease and desist/demand letter "asking for [its] internal do not call policy and to stop contacting

14  him."[67] The letter additionally advised Lexington that its messages were in violation of the

15  TCPA.[68] Mr. Drew also alleges he filed a small-claims case against Lexington.[69] Despite these

16  efforts, Lexington sent at least five more messages.[70] Thus, Mr. Drew implies that Lexington sent

17  the subsequent messages knowing both that he did not consent to them and that they violated the

18  law.

19  The court concludes trebled damages are not appropriate in this case for two reasons. First,

20  although Mr. Drew alleges he sent Lexington a letter and sued it in small claims court, it is not

21  persuaded by the *evidence* he provides. The only evidence to support his argument is Mr. Cilia's

22  declaration that he was with Mr. Drew when he sent the cease and desist letter, and that despite

---

[66] FAC ¶ 33.

[67] *Id.* ¶ 9.

[68] Motion, Ex. A.

[69] FAC ¶ 10.

[70] *Id.* ¶¶ 11-15, 18.

sending the letter, Lexington continued sending messages.[71] Neither Mr. Drew nor Mr. Cilia, however, attest to the validity and veracity of the letter he attaches to his motion. Nor does Mr. Drew provide any evidence that Lexington ever received the letter (or notice of his small-claims case). The court does not think this evidence is sufficient to prove a knowing or willful violation. Second, the statutory minimum for seven separate TCPA violations is $3,500. Whether or not Lexington acted knowingly or willfully, and on this record, this amount is sufficient to accomplish the purpose of trebling TCPA damages — to deter future violations. *See j2 Global Commc'ns¸* 2009 WL 4572726 at *8. Mr. Drew provides no evidence that Lexington has previously been sued for violating the TCPA or that $3,500 will be considered trivial and thus not deter future misconduct. *See Heidorn*, 2013 WL 6571629 at *17 (denying treble damages where plaintiff did not provide evidence that the defendant was previously sued under the TCPA or that the statutory minimum would be trivial to the defendant). The court therefore concludes that Mr. Drew has not proven his case for trebled damages and, in its discretion, finds that the statutory minimum of $500 per violation is sufficient.

### 3.2 Compensatory damages

Mr. Drew provides insufficient evidence to prove his demand for compensatory damages. His claim for $20,000 is wholly conclusory and he provides no evidence substantiating this amount. *See Cannon*, 2011 WL 3267714 at *4 (invasion of privacy claim for damages is not supported by "conclusory allegations of loss of large sums of money" with "no evidence in support of [the plaintiff's] calculations"). As such, even if he were successful in alleging his claim for invasion of privacy, he has not proven his damages.

### 3.3 Injunctive relief

As discussed above, Mr. Drew alleges sufficient facts to support his claim that someone, but not Lexington, violated the TCPA. Therefore, he would be entitled to an injunction to cease future violations. Because he has not proven that it was Lexington that violated the statute, however, the he has not proven that he is entitled to an injunction against Lexington.

---

[71] Cilia Decl. at 1.

**CONCLUSION**

The court denies without prejudice Mr. Drew's motion for default judgment because did not specify adequately Lexington's involvement or his measure of damages. He may amend his complaint to alter the relief he seeks or he may submit evidence supporting his allegations. He must do so within thirty days of this order.

**IT IS SO ORDERED.**

Dated: April 18, 2016

_____
LAUREL BEELER
United States Magistrate Judge

United States District Court
Northern District of California